UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WRI WEST GATE SOUTH, L.P.,<br><br>  Plaintiff,<br><br>  v.<br><br>RELIANCE MEDIAWORKS (USA) INC., et al.,<br><br>  Defendants. | Case No. 14-cv-03802-JD   (JSC)<br><br>**REPORT AND RECOMMENDATION RE: RELIANCE MEDIAWORKS LTD.'S MOTION TO DISMISS COMPLAINT FOR INSUFFICIENT PROCESS AND FOR LACK OF PERSONAL JURISDICTION**<br><br>Re: Dkt. No. 68 |

This action involves the alleged breach of a commercial lease and guaranty between Plaintiff WRI West Gate South, L.P. ("WRI") and Defendants Reliance Mediaworks, Ltd. ("Reliance") and its wholly owned subsidiary Reliance Mediaworks (USA) Inc., d/b/a Big Cinemas ("Big Cinemas"). Now pending before the Court is Reliance's Motion to Dismiss under Rule 12(b)(5) for insufficient process and under Rule 12(b)(2) for lack of personal jurisdiction. The motion was referred to the undersigned magistrate judge for a report and recommendation. (Dkt. No. 80.) Oral argument on the motion was scheduled for October 8, 2015; however, Reliance failed to appear. After carefully considering the parties' pleadings, the Court recommends that Reliance's Motion to Dismiss be DENIED.

**FACTUAL AND PROCEDURAL HISTORY**

WRI is a Texas limited partnership with its principal place of business in Houston, Texas. (Dkt. No. 81 ¶ 3.) Big Cinemas is a New Jersey corporation with its principal place of business in Iselin, New Jersey. (*Id.* ¶ 6.) Reliance, the parent company for Big Cinemas, is an Indian public limited company with its principal place of business in Mumbai, India. (*Id.* ¶ 7.)

WRI entered into a commercial lease agreement with Big Cinemas on December 15, 2009, for real property in Fremont, California. (Dkt. No. 81 ¶ 8; Dkt. No. 81-1 at 2-18.) Under this

lease, WRI as landlord would lease the property to Big Cinemas for a five-year term from January 29, 2010, to January 31, 2015. (Dkt. No. 81 ¶ 9; Dkt. No. 81-1 at 2 ¶ 5.) For further security and consideration, Reliance executed a Guaranty with WRI for Big Cinemas's lease on December 10, 2009. (Dkt. No. 81 ¶ 16; Dkt. No. 81-1 at 24-26.) In the Guaranty, Reliance "absolutely and unconditionally guarantee[d] the full performance and observance of all the covenants, duties and obligations (including, without limitation, the obligation to pay all rent and other sums) therein provided to be performed and observed by Tenant" and made itself "fully liable for such performance." (Dkt. No. 81-1 at 24 ¶ 1.) The Guaranty specifies that "all matters relating to th[e] Guaranty and the covenants, duties and obligations of Guarantor under th[e] Guaranty shall be governed by the laws of the State of California." (*Id.* ¶ 6.) Additionally, the Guaranty requires Reliance to "acknowledge[] and agree[] that th[e] Guaranty may reasonably be expected to benefit, directly or indirectly," Reliance. (*Id.* ¶ 10.) Reliance also "waived and released . . . without limitation," certain defenses under California law. (*Id.* ¶ 5.)

Big Cinemas grew tardy in its rent and other payments under the Lease before ceasing all payments entirely in February 2014. (Dkt. No. 81 ¶ 20.) WRI subsequently undertook procedures to evict Big Cinemas and repossess the property, which it did on July 9, 2014. (*Id.* ¶¶ 21-25.) WRI then filed a complaint on August 21, 2014, and a First Amended Complaint[1] ("FAC") on September 17, 2015, in the Northern District of California, for breach of contract against Big Cinemas and breach of guaranty against Reliance. (*See* Dkt. Nos. 1, 81.) WRI served Big Cinemas in September 2014, but was unable to serve Reliance in India until April 2015 as it was required to do so in accordance with the Hague Convention. (*See* Dkt. Nos. 8, 45.) Reliance then filed its motion to dismiss on July 30, 2015, but has not otherwise appeared or filed a responsive pleading in this matter. (Dkt. No. 68 at 2.)

## LEGAL STANDARDS

**A.     Motion to Dismiss for Insufficient Service of Process**

The Court lacks jurisdiction over defendants who have not been properly served in

---

[1] Although the First Amended Complaint was filed after the completion of briefing, per the district court, the motion is to be treated as applying to the First Amended Complaint. (Dkt. No. 80.)

2

accordance with Federal Rule of Civil Procedure 4.  *SEC v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).  Accordingly, Rule 12(b)(5) permits a court to dismiss an action for insufficient service of process.  Fed. R. Civ. P. 12(b)(5).  Rule 12(b)(5) allows the defendant to attack the manner in which service was, or was not, attempted.  *Id.*  When the validity of service is contested, the burden is on the plaintiff to prove that service was valid under Rule 4.  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).  If the plaintiff does not satisfy this burden, the Court has the discretion to either dismiss the action or retain the action and quash the service of process.  *Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976).

"Dismissals for defects in the form of summons are generally disfavored."  *U.S.A. Nutrasource, Inc. v. CNA Ins. Co.*, 140 F. Supp. 2d 1049, 1052 (N.D. Cal. 2001).  "Technical defects in a summons do not justify dismissal unless a party is able to demonstrate actual prejudice."  *Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1404 (9th Cir. 1994).  "Rule 4 is a flexible rule that should be liberally construed."  *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984) (internal citations omitted).

### B. Motion to Dismiss for Lack of Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "Where, as here, a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts."  *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010).  The Court then "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction."  *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995).  A prima facie showing means that "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant."  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [plaintiff's] favor."  *Love*, 611 F.3d at 608.

When no applicable federal statute governs personal jurisdiction, California law applies.

1  *Schwarzenegger*, 374 F.3d at 800.  California's long-arm jurisdictional statute and federal due

2  process requirements are coextensive; accordingly, "the jurisdictional analyses under state law and

3  federal due process are the same." *Id.* at 800-01.  The Due Process Clause requires that

4  nonresident defendants have "minimum contacts" with the forum state such that the exercise of

5  personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l*

6  *Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)

7  (internal quotation marks omitted).  A court may exercise either general or specific jurisdiction

8  over a nonresident defendant.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

## DISCUSSION

Reliance moves to dismiss the FAC on two grounds: (1) WRI improperly served Reliance under Northern California Civil Local Rule 4-2 by failing to include certain Supplementary Materials when it served the complaint, and (2) even if Reliance was properly served, the Court lacks personal jurisdiction over Reliance because it did not have systematic, continuous contacts with California, as required by the California Long-Arm Statute.  As discussed below, Reliance's arguments regarding service are specious at best.  With respect to jurisdiction, the Court concludes that it may exercise specific jurisdiction over Reliance because by signing the Guaranty, Reliance interjected itself in its subsidiary's transaction with a California company, in a Guaranty subject to California law, in order to benefit itself and its subsidiary.  Having found specific jurisdiction, the Court declines to reach the question of general jurisdiction.

### A.   Service

Reliance argues that because WRI did not properly serve it with certain supplemental materials required under Civil Local Rule ("Civ. L.R.") 4-2, the Court lacks personal jurisdiction. Pursuant to Rule 4(f)(1), an individual "may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1).  Civ. L.R. 4-2 further requires that "[a]long with the complaint and the summons or request for waiver of service, a party subject to Civ. L.R. 16-2(a), (b), or (c) must serve the following Supplementary Material":

4

> (a) A copy of the Order Setting Initial Case Management Conference with ADR deadlines issued pursuant to Civil L.R. 16-2(a), (b) or (c);
> (b) Any pertinent Standing Orders of the assigned Judge;
> (c) A copy of the assigned judge's order and instructions for the preparation of a Case Management Statement or, if none, the Court's form found at cand.uscourts.gov, pursuant to Civil L.R. 16-10; and
> (d) Except in cases assigned at the time of filing to a Magistrate Judge, a copy of the form allowing a party to consent to assignment of the case to a Magistrate Judge.

Civ. L.R. 4-2.

Reliance does not dispute that service was proper under Rule 4(f)(1) and concedes that it received the Hague Convention Forms, the Summons, and the Complaint. Instead, Reliance contends it did not receive any of the following: the Order Setting Initial Case Management Conference and ADR deadlines, the standing orders of the assigned judge, a court form for a CMC statement and a copy allowing Reliance to consent to a Magistrate Judge, as required by Civ. L.R. 4-2. (Dkt. No. 68 at 5.) On this basis, Reliance argues WRI's service is invalid. (*Id.*)

Reliance's argument appears factually erroneous. WRI's Certificate of Service indicates that WRI sent a total of nine documents, including the summons, complaint, and the very "supplemental materials" Reliance argues it never received, through the Hague Convention for service in India. (*See* Dkt. No. 45 at 1; Dkt. No. 74 at 8.) The Certificate of Service also includes a letter dated January 31, 2015, indicating "the documents [were] duly served on the subject party." (Dkt. No. 45 at 5.) Further, the bailiff's sworn statement shows that he delivered "one set of enclosed document[s]" along with the Summons. (Dkt. No. 45 at 8-9.) Reliance did not rebut or respond to these facts in its reply, nor did it provide evidence to the contrary. (*See* Dkt. No. 75.) Thus, WRI satisfied Civ. L.R. 4-2's requirements and properly served Reliance. *See, e.g.*, *Abouelhassan v. Chase Bank*, No. C 07-03951, 2007 WL 4351022 (N.D. Cal. Dec. 12, 2007) (denying plaintiff's motions for sanctions when defendant's proof of service indicated defendant served each of the required documents on plaintiff). The cases cited by Reliance do not suggest otherwise. *See, e.g.*, *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 102-03 (1987) (service insufficient where plaintiff served parties that, under the applicable federal statute, could not receive service); *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 880-81 (Fed. Cir.

1997) (service of process insufficient where government served U.S.-based attorney that was not authorized to receive service of process for defendant); *Verde Media Corp. v. Levi*, No. 14-cv-00891 YGR, 2014 WL 3372081, at *2-3 (N.D. Cal. July 9, 2014) (service insufficient where plaintiff attempted substitute service at erroneous business address and through individual unable to accept service).

Accordingly, the Court recommends that Reliance's Motion to Dismiss under Rule 12(b)(5) be DENIED.

### B. Motion to Dismiss for Lack of Personal Jurisdiction

Defendant Reliance moves to dismiss WRI's FAC for lack of personal jurisdiction under Rule 12(b)(2), contending that Reliance has no presence in California and did not direct any activity toward California residents, and therefore has insufficient contact with the state to support the Court's exercise of specific jurisdiction. The Court disagrees.

"A court may exercise specific jurisdiction over a foreign defendant if his or her less substantial contacts with the forum give rise to the cause of action before the court. The question is whether the cause of action arises out of or has a substantial connection with that activity." *Doe v. Unocal*, 248 F.3d at 923 (internal citations and quotation marks omitted). The Ninth Circuit has articulated a three-part test to determine whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff has the burden of proving the first two prongs; if it does so, the defendant must demonstrate that the court's exercise of personal jurisdiction would be unreasonable. *Id.* "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal citations and quotations omitted).

6

#### a. Purposeful Availment

Under the first prong of the Ninth Circuit's test, the court engages in either a "purposeful direction" or a "purposeful availment" analysis. *See Schwarzenegger*, 374 F.3d at 802. Purposeful availment is generally employed in contract cases. *Id.* Under that analysis:

> [A] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contact there. By taking such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." In return for these "benefits and protections," a defendant must—as a quid pro quo—"submit to the burdens of litigation in that forum."

*Id.* at 802. "A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions *outside* the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803. As this action sounds in contract, the Court will apply the purposeful availment test.

Reliance argues that its "single cont[act] as a guarantor for its' [sic] subsidiary" is not sufficient contact to establish specific jurisdiction. Reliance is incorrect: the Ninth Circuit's decision in *Forsythe v. Overmyer*, 576 F.2d 779 (9th Cir. 1978) establishes that such contact is sufficient.[2] In *Forsythe*, the plaintiffs purchased a property in Oregon from D.H. Overmyer, Inc. (Oregon) ("D.H. Oregon"), an Oregon corporation and subsidiary of D.H. Overmyer, Inc. (Ohio) ("D.H. Ohio"), an Ohio corporation. 576 F.2d at 781. The plaintiffs agreed to lease the property back to D.H. Oregon after purchasing it, but plaintiffs first required a personal guarantee from the chairman of the board and sole stockholder of D.H. Ohio: D.H. Overmyer, a New York resident. *Id.* Overmyer executed the guaranty. The lease, but not the guaranty, contained a California forum selection and choice of law clause. *Id.* Eventually, D.H. Oregon failed to meet its

---

[2] While *Forsythe* is dispositive, it is not the only case to find a personal guarantee enough for specific jurisdiction over nonresident defendants. *See, e.g., DuBois v. All Am. Transp., Inc.*, No. 05-1765-JE, 2006 WL 2054640 (D. Or. July 24, 2006) (finding specific jurisdiction under more exacting Oregon law standards over business and owner with no offices, employees, agents or subsidiaries in Oregon, and that had never solicited business in Oregon, based on business owner's personal guarantee of business's contract with Oregon entity).

obligations under the lease and, along with D.H. Ohio and several other of its subsidiaries, filed for Chapter XI bankruptcy. *Id.* The plaintiffs sued Overmyer on the guarantee in California, and after Overmyer lost his motion to dismiss for lack of personal jurisdiction, the case went trial. The court entered judgment against Overmyer, and he appealed the judgment to the Ninth Circuit to challenge the district court's jurisdiction. *Id.*

The Ninth Circuit affirmed the finding of specific jurisdiction based on the following: (i) plaintiffs and D.H. Oregon negotiated the lease contract in California; (ii) the lease contained California forum selection and choice of law clauses; (iii) plaintiffs requested the guaranty as a condition to entering into the agreement; (iv) Overmyer, though not a party to the contract, had guaranteed its subsidiary's obligations under it; and (v) in signing the guaranty, Overmyer personally participated "to secure a benefit for his corporation and, indirectly, himself," and "interjected himself into the transaction by assuming personal liability." *Forsythe*, 576 F.2d at 783. Overmyer had previously made similar guarantees to at least ten other California residents. *Id.* at 783 n.6.

The facts of this case do not differ materially from *Forsythe*. WRI and Big Cinemas entered into a lease contract for California real estate. The lease contained a California choice of law provision. WRI requested a guaranty from Big Cinemas's parent company, Reliance, as a condition for WRI's assent to enter into the lease with Big Cinemas. (Dkt. No. 81 ¶ 16; Dkt. No. 81-1 at 15 § 25.05.) Reliance signed the Guaranty. The differences from *Forsythe* only lend further support to a finding of purposeful availment: the Guaranty here contained its own California choice of law provision and through the Guaranty, Reliance expressly "acknowledge[d] and agree[d] that th[e] Guaranty may reasonably be expected to benefit [Reliance], directly or indirectly," and waived several defenses, including some under California Law. (Dkt. No. 81-1 at 24 ¶¶ 5, 10; Dkt. No. 74 at 7.) And unlike Overmyer, a New York resident with limited contact with California, Reliance has been shown to have its own business and relationships with California outside of the contract. (Dkt. No. 74-3 at 16 (describing clients in Burbank); Dkt. No. 74-4 at 13, 20 (describing an array of U.S. companies in California with which Reliance does business).)

Reliance argues that *Forsythe* is inapplicable because here a corporate parent guaranteed the contract of a subsidiary while in *Forsythe*, an officer executed a personal guaranty. (*See* Dkt. No. 75 at 5-6.) Reliance cites no cases in support of this distinction, which is unsurprising as the argument makes no sense. *See United Van Lines, LLC v. Plains Med. Ctr.*, No. CV10-8212-PCT, 2011 WL 3684516, at *3-6 (D. Ariz. Aug. 23, 2011) (finding specific jurisdiction in Arizona over corporate employer incorporated in Missouri, but with local offices in Arizona, where that employer personally guaranteed payment for employee's move).

Reliance's citation to *In re W. States Wholesale Nat'l Gas Litig.*, 605 F. Supp. 2d 1118 (D. Nev. 2009), and *Pac. Atl. Trading Co., Inc. v. M/V Main Exp.*, 758 F.2d 1325 (9th Cir. 1985), is similarly unavailing. In *In re W. States*, specific jurisdiction did not exist over a nonresident parent company that signed a guaranty for a subsidiary's contract because the claim at issue did not arise out of that contract. 605 F. Supp. 2d at 1132. Here, the claims arise from the very contract that Reliance guaranteed.

*Pacific Atlantic* is similarly distinguishable. There, a West German common carrier transported a shipment of goods to Malaysia for a San Francisco company. 758 F.2d at 1326. When the recipients, two Malaysian companies, did not have the proper bills of lading to pay for the goods, the West German carrier refused to turn over the shipment. The Malaysian companies then co-signed a letter of guarantee to indemnify the carrier against any losses from the delivery and took the goods. *Id.* The San Francisco company later sued the carrier for conversion of the goods, and the carrier filed a third-party complaint against the Malaysian entities under the guarantee. *Id.* A district court entered default judgment against the Malaysian entities, finding "the execution of the indemnity agreement constituted a purposeful availment of the benefits and protections of California laws." *Id.* at 1328. The Ninth Circuit reversed on the grounds that the district court lacked personal jurisdiction over the Malaysian entities. Distinguishing those facts from *Forsythe*, the Ninth Circuit indicated that the carrier's indemnity agreement with the Malaysian entities "was executed as a separate transaction in Malaysia, and played no part in the negotiation of the agreement" between the San Francisco company and Malaysian entities. The agreement could therefore not serve as the source for jurisdiction over the Malaysian entities. *Id.*

1   at 1328-29.  Here, in contrast, the Guaranty and the underlying contract are linked and arose from
2   a single transaction: Reliance signed the Guaranty specifically to induce WRI to enter into a lease
3   with Reliance's subsidiary, Big Cinemas, in California.
4       The Court thus concludes that Reliance purposefully availed itself of the California forum.

### b.   Claim Arising Out of Reliance's Activities in the Forum

The second prong for specific jurisdiction is a "but-for" test that requires the "contacts constituting purposeful availment . . . be the ones that give rise to the current suit." *Bancroft*, 223 F.3d at 1088 (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 474 (9th Cir. 1995)).  As discussed above, this requirement is satisfied.  WRI's alleged harm arises from Big Cinemas's breach of the lease agreement that Reliance guaranteed.  WRI sought Reliance's guarantee as a condition to WRI's willingness to lease the Fremont property to Big Cinemas.  (Dkt. No. 81 ¶¶ 16, 18-19; Dkt. No. 81-1 at 24 ¶ 1.)

### c.   Reasonableness

The final prong for specific jurisdiction asks whether the exercise of jurisdiction is reasonable. *Bancroft*, 223 F.3d at 1088.  Where the first two prongs are satisfied, the burden shifts to the defendant to put on a "compelling case" demonstrating the unreasonableness of finding jurisdiction. *Schwarzenegger*, 374 F.3d at 802; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  Because the Court concludes that WRI has satisfied the first two factors, the burden shifts to Reliance to demonstrate reasonableness.  Courts consider several factors to determine reasonableness: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Schwarzenegger*, 374 F.3d at 802.

In its Motion, Reliance makes the bare assertion that "given the local context of WRI's claims," the Court's exercise of personal jurisdiction over Reliance would be "both unreasonable and unfair." (Dkt. No. 68 at 7.)  This is not a "compelling case" for unreasonableness.  *See*

*Richmond Techs., Inc. v. Aumtech Bus. Solutions*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *7 (N.D. Cal. July 1, 2011) ("[T]o satisfy their burden to present a 'compelling case' against jurisdiction, Defendants must do more than simply claim, without elaboration, that litigation in a distant country presents an unreasonable burden."). Reliance has failed to present any specific allegations as to the unreasonableness of litigation proceeding in this district. Further, Reliance has not alleged that India or another state would have a greater interest in the litigation or present a more efficient forum for the resolution of this dispute. *See id.* (Defendants had "not alleged that litigation in California would present a serious financial or physical hardship, nor have they suggested that India or some other state has a greater interest in the litigation or would provide a more efficient forum for resolving the dispute.") To the contrary, Reliance retains U.S. legal counsel; it has an award winning team in its Burbank, California office; and it entered into a Guaranty that contained a California choice of law provision and waived certain California defenses in order to induce WRI to lease a California property to Reliance's subsidiary. (Dkt. No. 74-2 at 2; Dkt. No. 74-4 at 30; Dkt. No. 81-1 at 24 ¶ 6.) In light of these facts, and the absence of any contrary showing by Reliance, Reliance has not satisfied its burden to make a compelling case against the exercise of jurisdiction.

Accordingly, the Court concludes that WRI has made a prima facie showing that Reliance is subject to personal jurisdiction in this Court such that Reliance's motion to dismiss for lack of personal jurisdiction should be denied.

**CONCLUSION**

For the reasons stated above, the Court recommends that Reliance's Motion to Dismiss WRI's FAC for insufficient service of process and lack of personal jurisdiction be DENIED. (Dkt. No. 68.)

Any party may file objections to this report and recommendation with the district court judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); N.D. Cal. Civ. L.R. 72-3. Failure to file objections within the specified time may waive the right to appeal the district court's ultimate Order.

**IT IS SO ORDERED.**

11

Dated: October 9, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge